# United States Court of Appeals

## For the First Circuit

No. 02-2675

PEOPLE TO END HOMELESSNESS, INC.,

Plaintiff, Appellant,

DEVELCO TENANTS ASSOCIATION,

Plaintiff,

v.

DEVELCO SINGLES APARTMENTS ASSOCIATES; DEVELCO MODERN APARTMENTS
ASSOCIATES; DEVELCO APARTMENTS, INC.; DEVELCO FAMILY APARTMENTS
ASSOCIATES; HEDCO, LTD.; WOONSOCKET HOUSING AUTHORITY; MEL
MARTINEZ, IN HIS OFFICIAL CAPACITY AS SECRETARY, UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. David L. Martin, U.S. Magistrate Judge]
[Hon. Ernest C. Torres, U.S. District Judge]

Before

Howard, Circuit Judge,
Bownes and R. Arnold,* Senior Circuit Judges.

---

*The Hon. Richard S. Arnold, of the Eighth Circuit, sitting by
designation.

John Cann with whom Timothy L. Thompson and Ann M. Norton were on brief for appellant, People to End Homelessness, Inc..

Terri L. Roman, Attorney, with whom Carole W. Wilson, Associate General Counsel, Howard Schmeltzer, Assistant General Counsel, United States Department of Housing and Urban Development, Margaret E. Curran, United States Attorney, and Michael P. Iannotti, Assistant United States Attorney, were on brief for appellees Mel Martinez, Secretary of the United States Department of Housing and Urban Development and the United States Department of Housing and Urban Development.

Lynette Labinger and Roney & Labinger were on brief for Develco Singles Apartments Associates, Develco Modern Apartments Associates, Develco Apartments, Inc., Develco Family Apartments Associates, and Hedco, Ltd.

———————————

July 31, 2003

———————————

**BOWNES**, **Senior Circuit Judge**. Plaintiff-appellant, People to End Homelessness, Inc. ("PEH"), is a non-profit organization operating in Woonsocket, Rhode Island, which seeks to expand and preserve the supply of affordable housing in Rhode Island. Defendants-appellees in this case are the Develcos (the "Owners"), a group of four separately-owned but commonly managed housing developments located in Woonsocket, Rhode Island. The other defendants-appellees in this case are the United States Department of Housing and Urban Development ("HUD") and its Secretary. PEH brought suit in federal district court challenging the expiration of low-income housing contracts between HUD and the Owners. The district court granted HUD's motion to dismiss and then granted summary judgment for the Owners. For the reasons set forth below, we affirm both rulings.

## I.       BACKGROUND

This litigation revolves around the "Section 8" program created by HUD in 1974. The program is governed largely by the United States Housing Act of 1937, § 8 as amended, 42 U.S.C. § 1437f (2003) ("the Housing Act"). We begin with a brief sketch of how this program works. The purpose of the program is to "aid low-income families in obtaining a decent place to live and [promote] economically mixed housing." Id. § 1437f(a). Under the Section 8 program, HUD enters into Housing Assistance Payment ("HAP") contracts with private property owners and determines the maximum

-3-

monthly rate that the owner may charge for each dwelling.  Under the terms of the HAP contract, the property owner receives rent directly from two sources, the low-income tenant and HUD.  The low-income tenants pay the property owner a percentage of their adjusted income, typically about 30 percent.  The difference that remains between the HAP contract rent and the portion provided by the tenant is paid to the owner by HUD in the form of an assistance payment or subsidy.

Owners are required to provide the Secretary of HUD and the low-income tenants "not less than one year" written notice of their intention to terminate any Section 8 HAP contract.[1]  Id. § 1437f(c)(8)(a).  If the owner does not provide the proper notice, the owner may not evict the tenants or increase the tenants' rent until such time as the owner has provided the notice and the full one year has expired.  Id. § 1437f(c)(8)(B).  In circumstances when the HAP contracts expire, the Secretary and the owner may agree to renew the contract.

Should the owner choose not to renew, the Housing Act dictates that HUD "will provide tenant-based rental assistance to all eligible residents, enabling them to choose the place they wish to rent, which is likely to include the dwelling unit in which they

---

[1] The statute defines termination of a HAP contract as, "the expiration of the assistance contract or an owner's refusal to renew the assistance contract, and such term shall include termination of the contract for business reasons."  Id. § 1437f(c)(8)(D).

-4-

currently reside." Id. § 1437f(c)(8)(A). If tenants choose to stay in the unit in which they currently reside, HUD issues those tenants "enhanced vouchers." These vouchers cover the cost of any increase in rent that the owner of the dwelling may charge once the HAP contract expires, while keeping the tenants' portion of the rent stable at the pre-expiration rate.

Having described the basic mechanics of the Section 8 program, we now turn to the events that prompted this appeal. The Owners began providing affordable housing to low-income families pursuant to Section 8 HAP contracts in the mid-1970's. Since that time, the Owners and HUD entered into numerous renewal HAP contracts. The most recent HAP contracts were set to expire on May 31, 2001. Six weeks before the scheduled expiration date, the Owners sent the tenants a notice informing them that the HAP contracts would not be renewed. HUD, in coordination with the Woonsocket Housing Authority ("WHA"), subsequently issued enhanced vouchers to each eligible tenant.[2]

On May 30, 2001, the day before the HAP contracts were set to expire, PEH filed a complaint, a motion for a temporary restraining order and a motion for a preliminary injunction in the district court against the Owners, HUD and its Secretary, and the WHA. PEH raised two major issues in the complaint. First, PEH

---

[2]  The WHA is a public housing authority created under state law which operates and administers various low-income housing programs in the City of Woonsocket.

-5-

argued that the six weeks notice given to the tenants by the Owners failed to comply with the one year federal notice requirement. Second, PEH argued that HUD was acting in violation of federal law by approving the Owners' decision not to renew the expiring HAP contracts and by issuing enhanced vouchers to the tenants.

On June 22, 2001, PEH moved to add the Develco Tenant Association (DTA), a group of Develco tenants, as a co-plaintiff with PEH. There were no objections to the motion and the complaint was amended to add DTA as a co-plaintiff. Shortly thereafter, the Owners agreed to a voluntary restraining order. The order prohibited the Owners from evicting or raising the rent on any tenant for one year, provided that the tenant was a participant in the Section 8 program.

After the restraining order was issued, HUD moved to dismiss for failure to state a claim. The district court, in a memorandum opinion dated March 29, 2002, granted the motion. The district court ruled that federal law did not obligate or even authorize HUD to "unilaterally extend HAP contracts against the will of owners." Similarly, the district court stated that there was no statutory authorization which would require the Owners to continue participating in HAP contracts once they expired. The district court stated that the "sole remedy for failing to provide the requisite notice is that the owner is prohibited from evicting

tenants or increasing their rent payments until such notice has been provided and the prescribed notice period has elapsed."

With HUD dismissed from the case, the Owners and WHA moved for summary judgment. In a second memorandum opinion, dated October 16, 2002, the district court held that PEH and DTA lacked standing to pursue their complaint and granted the motion. The district court rejected PEH's request to require the Owners to continue renting units under the Section 8 HAP contracts. The court found that HUD's decision not to renew the expiring HAP contracts was a permissible exercise of HUD's discretion, and that since the contracts had expired, it was not possible to grant the relief requested. PEH filed this timely appeal challenging the district court's decision to dismiss PEH's claims against HUD and grant the Owners' motion for summary judgment.[3] The DTA no longer exists and therefore has not joined in this appeal. No other Develco tenant joined PEH in this case at any time.

## II.    DISCUSSION

We address first PEH's challenge to the district court's decision to dismiss HUD from this lawsuit for failure to state a claim. See Fed. R. Evid. 12(b)(6). We review a district court's allowance of a motion to dismiss de novo. See Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 5 (1st Cir. 2002). In doing so,

---

[3]  PEH does not appeal the district court's grant of summary judgment in favor of the WHA and the WHA is not involved in this appeal.

"[w]e accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Id. at 6.

PEH's complaint alleged that HUD violated a variety of federal laws, including the Housing Act, the Administrative Procedures Act, 5 U.S.C. § 701 et seq. (2003), the Fair Housing Act, 42 U.S.C. § 3608(e)(5) (1994), and the Fifth and Fourteenth Amendments to the Constitution. Fairly read, the essence of these claims is that HUD illegally permitted the HAP contracts to expire. PEH alleges that HUD should have required the Owners to remain in the Section 8 program under HAP contracts until the one year notice period ended pursuant to the voluntary restraining order agreed to by the Owners.

This argument, however, is forestalled by the clear language of the Housing Act. See 42 U.S.C. § 1437f. When "the language of a statute 'is plain and admits of no more than one meaning . . . the sole function of the courts is to enforce the statute according to its terms.'" Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 858 (1st Cir. 1998) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). Section (c)(8)(B) of the Housing Act states in relevant part:

> In the event the owner does not provide the
> notice required, the owner may not evict the

> tenants or increase the tenants' rent payment until such time as the owner has provided the notice and 1 year has elapsed. The Secretary <u>may</u> allow the owner to renew the terminating contract for a period of time sufficient to give tenants 1 year of advance notice under such terms and conditions as the Secretary may require.

(emphasis added). Congress' statement that the Secretary "may allow" the owner to renew the HAP contracts makes it apparent that HUD was not required to renew the Section 8 HAP contracts, even in the face of a notice violation.

PEH also argues that HUD should not have issued enhanced vouchers to the tenants once the Owners had provided inadequate notice. According to PEH, enhanced vouchers can only be issued when an owner provides proper notice and the one year notice period has expired. This argument is also contrary to the clear statutory language adopted by Congress.

We begin by noting that the Housing Act does not directly support PEH's argument. Section (c)(8)(B) of the statute, which was quoted above and describes how the Section 8 program works when an owner fails to give proper notice, does not mention enhanced vouchers, let alone prohibit their use. Rather, enhanced vouchers are covered under a different section of the statute. See id. § 1437f(t). This section states, in pertinent part, that "the termination or expiration of the contract for rental assistance . . . results in tenants . . . being eligible for enhanced voucher

assistance under this subsection." Id. § 1437f(t)(2). There are, of course, exceptions. These include instances when a tenant leaves the covered project or when the voucher is used by someone other than the family who was originally issued the voucher. See id. § 1437f(t)(1)(C). But Congress did not include in this list of exceptions an owner's failure to give proper notice. That fact certainly does not help PEH's argument. See Com. of Mass. by Dept. of Public Welfare v. Yeutter, 947 F.2d 537, 542 (1st Cir. 1991) (finding it relevant that "[n]owhere in this section do the drafters suggest that the Secretary may not request information and materials beyond those specified as forbidden fruit"). But it also does not end the matter. See Stoutt v. Banco Popular de P.R., 320 F.3d 26, 30 (1st Cir. 2003) (stating that omissions in statutory language are not necessarily conclusive because "[c]ourts have often added to statutes unexpressed conditions or qualifications consonant with statutory purpose or other public concerns").

More important is that the section of the Housing Act describing enhanced vouchers, see 42 U.S.C. § 1437f(t)(2), explicitly defines when a tenant may be eligible for enhanced vouchers. This section references the Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub. L. No. 105-65, 111 Stat. 1344 (codified at 42 U.S.C. § 1437f) ("MAHRA"). The MAHRA, in turn, provides that when a Section 8 contract is "not renewed . . . the Secretary shall make enhanced voucher assistance

. . . available on behalf of each low-income family who, upon the date of such expiration, is residing in an assisted dwelling unit in the covered project."  Id. § 524(d)(1) (emphasis added).  This provision applies to a "contract [that] will (under its own terms) expire during the period consisting of fiscal years 2000 through 2004."  Id. § 524(d)(2)(A)(VII).  That is precisely the situation we face in this case.  The HAP contracts between the Owners and HUD expired on May 31, 2001.  Upon expiration of the HAP contracts, the MAHRA requires HUD to issue the enhanced vouchers if a tenant chooses to remain in the same unit.  HUD did so.  In light of this clear statutory language, we simply cannot agree with PEH's argument that HUD acted improperly when it issued enhanced vouchers to the tenants in this case.  See Riva v. Comm. of Mass., 61 F.3d 1003, 1007 (1st Cir. 1995) ("In statutory construction case, beginning point must be language of statute, and when statute speaks with clarity to an issue, judicial inquiry into statute's meaning, in all but the most extraordinary circumstance, is finished." (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992))).

PEH challenges this clear statutory language by drawing our attention to a document that it considers "new pertinent and significant legal authority."  The document is related to testimony that HUD provided at a Senate Subcommittee hearing on affordable housing preservation on October 9, 2002.  Following the hearing,

the subcommittee issued a series of follow-up questions to HUD, some of which dealt with HUD's handling of the Section 8 program. PEH cites to the written responses that HUD provided to the questions.

PEH presents this document to us as a supplemental letter, as authorized by Fed. R. App. P. 28(j). HUD argues that we should not consider PEH's document because supplemental authority as defined by Rule 28(j) is generally understood to refer to new case law, which PEH's document is certainly not. We decline to define the contours of the rule, and choose instead to assume without deciding that it is permissible for us to consider PEH's document.

That said, we are not persuaded that the document helps advance PEH's argument in any meaningful way. This is because HUD's answers are inconsistent with PEH's position. HUD's answers, it seems to us, conform to our reading of the relevant statutes. For example, HUD states that it "does not have the legal authority to compel an unwilling owner to execute new project-based assistance contracts or to unilaterally prevent the contract from expiring." HUD goes on to explain that "[i]n cases where improper notice has been provided, eligible families residing in the property will still be issued enhanced vouchers when the contract expires." Perhaps most important of all is HUD's statement that "even if the notices given by the owners were not adequate, HUD

-12-

would still have been compelled by Section 524(d)(1) of MAHRA to issue enhanced vouchers to all eligible residents . . . on the date in which the project-based Section 8 contract expired."

PEH does not discuss or explain these statements by HUD. Instead, PEH calls our attention to one section of a single paragraph of the document which states, in relevant part, "the owner will not receive any voucher assistance payments until proper notice has been provided to the tenants." Read in isolation, this statement would support PEH's argument. Read in context, however, it does not. This is because it does not appear that the above statement was the policy of HUD at the time of the events in question here. Rather, it seems to us that the statement is a prediction of a future policy that HUD may adopt. We take this view because as part of its answer HUD indicated that it was revising its current policies. Up to the present time, however, HUD stated that it did not withhold enhanced vouchers as a tool to force compliance with the Housing Act's notice requirement. This reading of the answer is consistent with the many other statements made by HUD throughout the document, as well as this litigation, in which it claimed that enhanced vouchers have not been denied to tenants when an owner gave improper notice.

Whether the document is referring to HUD's policy in the future, or HUD's policy at the time the document was written is of little consequence. The important point is that the document does

not show that HUD's policies, <u>as they existed at the time relevant to this case</u>, prohibited the issuance of enhanced vouchers when an owner gave improper notice. Simply put, we do not find the new authority offered by PEH to be persuasive or relevant.

PEH also argues that a guidebook published by HUD regarding its Section 8 renewal policies demonstrates that HUD is prohibited from issuing enhanced vouchers when improper notice is given. The guidebook is dated January, 2001, and therefore was presumably in effect at the times relevant to this appeal. PEH focuses on the guidebook's statement that "[i]f proper notification was not provided . . . HUD/CA will offer the owner a short-term contract." The guidebook, however, does not say that HUD is prohibited from issuing enhanced vouchers. Even if it did, HUD could not use its own guidebook to contravene the clear Congressional commands, described above, that are contained in the Housing Act and the MAHRA. <u>See</u> <u>Chevron U.S.A., Inc.</u> v. <u>Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

In sum, we are unable to find any statutory support for PEH's argument that HUD was required to extend the HAP contracts once they expired and that HUD acted improperly in issuing the

-14-

enhanced vouchers to the tenants.  The district court's decision to grant HUD's motion to dismiss is affirmed.

We now turn to the district court's grant of summary judgment in favor of the Owners on the ground that PEH lacked standing to pursue its lawsuit once the voluntary restraining order had been issued and HUD had been dismissed from the case.  Before delving into the law, we stop to note that PEH is the only appellant.  The DTA has not joined in this appeal, although they were plaintiffs below.

We also briefly pause to address an argument made by the Owners that PEH waived its arguments as to standing because it failed to address the issue in its opening brief.  It is well settled in this circuit that issues "adverted to on an appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir.  1990).  After carefully reviewing PEH's appellate brief, however, we find that PEH sufficiently briefed the standing issue to warrant consideration of its arguments.  We therefore proceed to the merits.

We review a district court's grant of summary judgment de novo.  See Cotter v. City of Boston, 323 F.3d 160, 166 (2003).  In doing so, we draw all reasonable facts in the light most favorable to the appellants.  See Macone v. Town of Wakefield, 277 F.3d 1, 5

-15-

(1st Cir. 2002).  We affirm a grant of summary judgment "only if no genuine dispute of material fact exists."  Id.

Under Article III, § 2 of the Constitution, a party must have standing to maintain a suit in federal court.  See Clinton v. City of New York, 524 U.S. 417, 429 (1998).  Article III standing "imposes three fairly strict requirements."  Munoz-Mendoza v. Pierce, 711 F.2d 421, 424 (1st Cir. 1983).  The third and final requirement, which is our primary concern in this case, is redressability.  See Vt. Agency of Natural Res. v. United States Ex Rel. Stevens, 529 U.S. 765, 771 (2000).  This means that the plaintiff must show "a substantial likelihood that the requested relief will remedy the alleged injury in fact."  Id. (citation and quotation marks omitted).

The party invoking federal jurisdiction, in this case PEH, bears the burden of proving the elements of standing.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).  The Supreme Court has explained that the level of proof required depends on the stage of the proceedings.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  As litigation progresses, Article III places an increasingly demanding evidentiary burden on parties that seek to invoke federal jurisdiction.  A plaintiff who has standing at the motion to dismiss stage, does not automatically have standing at the summary judgment or trial stage.  See Lewis v. Casey, 518 U.S. 343, 358 (1996).  Instead, standing is "an

-16-

indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

This case proceeded beyond the motion to dismiss stage and ended at the summary judgment stage. By the time it reached the summary judgment stage, the district court had already issued a restraining order prohibiting the Owners from evicting the tenants or raising their rent for one year. The district court had also dismissed HUD from the litigation. Therefore, the question before us is whether PEH continued to have standing after these two important events. More specifically, we are concerned with whether the relief PEH requested from the district court would remedy its alleged injuries.

To make this determination it is important to define with precision PEH's alleged injuries. In its appellate brief, PEH states that the actions of the Owners caused it to suffer three injuries. PEH claims that: (1) it was denied an opportunity to seek preservation alternatives to the contract termination; (2) it was prevented from providing effective educational assistance to tenants; and (3) the adverse effects on the affordable housing market would threaten PEH's ability to locate low cost housing for its members and clients.

PEH alleges that the injuries it suffered could be redressed in two ways. First, by the district court setting aside

the issuance of the enhanced vouchers.  Second, by the district court using its equitable powers to order the Owners to extend the HAP contracts.  We do not agree.

The district court's restraining order redressed PEH's alleged injuries.  By granting a one year notice period, the district court gave PEH time to "seek preservation alternatives," time to convince the owners to change their minds about renewing the HAP contracts, and time to provide "effective educational assistance to tenants."  There is simply no evidence that prohibiting HUD from issuing enhanced vouchers would have redressed PEH's alleged injuries.  As for the "adverse effects on the housing market," this injury is not related to or caused by the Owners' failure to supply the required notice.  Put another way, even if the Owners had provided adequate notice from the very start, they could still have chosen not to renew the HAP contracts with HUD. As we have already explained, the applicable statutes simply do not require the Owners or HUD to renew the HAP contracts once they expire.  For these reasons, we hold that PEH does not have standing to pursue its lawsuit because its alleged injuries, to the extent they can be redressed, have already been remedied by the district court.

**III.      CONCLUSION**

The district court's decisions to grant HUD's motion to dismiss and grant the Owners' motion for summary judgment are **AFFIRMED.**   So ordered.