# United States Court of Appeals

## For the First Circuit

No. 05-2231

DOMINION ENERGY BRAYTON POINT, LLC,

Plaintiff, Appellant,

v.

STEPHEN L. JOHNSON, IN HIS CAPACITY AS ADMINISTRATOR OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

John M. Stevens, with whom Wendy B. Jacobs, Elisabeth M.
DeLisle, and Foley Hoag LLP were on brief, for appellant.
    Kristen L. Gustafson, Attorney, Environment and Natural
Resources Division, United States Department of Justice, with whom
Matthew J. McKeown, Deputy Assistant Attorney General, Greer
Goldman and John Bryson, Attorneys, were on brief, for appellees.

March 30, 2006

**SELYA**, **Circuit Judge**.  USGen New England, Inc., now Dominion Energy Brayton Point, LLC (Dominion), filed suit against the U.S. Environmental Protection Agency, its administrator, and its regional office (collectively, the EPA), alleging that the EPA failed to perform a non-discretionary duty when it refused to grant Dominion's request for a formal evidentiary hearing after issuing a proposed final National Pollution Discharge Elimination System (NPDES) permit.  The district court dismissed the case for want of subject matter jurisdiction.  On appeal, the central question presented concerns the effect of this court's decision in Seacoast Anti-Pollution League v. Costle, 572 F.2d 872 (1st Cir. 1978), in light of the Supreme Court's subsequent decision in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  Concluding, as we do, that Seacoast does not control, we affirm the judgment below.

## I.  BACKGROUND

Dominion owns an electrical generating facility in Somerset, Massachusetts (the station).  The station opened in the 1960s and, like most power plants of its era, utilizes an "open-cycle" cooling system.  Specifically, the station withdraws water from the Lees and Taunton Rivers, circulates that water through the plant's generating equipment as a coolant, and then discharges the water (which, by then, has attained an elevated temperature) into Mount Hope Bay.

-2-

The withdrawals and discharges of water are regulated by the Clean Water Act (CWA), 33 U.S.C. §§ 1251-1387. For the last three decades, these actions have been authorized by a series of NPDES permits issued by the EPA pursuant to section 402(a) of the CWA. See id. § 1342(a). The standards incorporated into those permits are determined under the thermal variance procedures laid out in section 316(a). See id. § 1326(a).

In 1998, the station applied for renewal of its NPDES permit and thermal variance authorization. The EPA issued a proposed final permit on October 6, 2003, in which it rejected the requested thermal variance. On November 4, Dominion sought review before the Environmental Appeals Board (the Board), see 40 C.F.R. § 124.19(a) (authorizing Board review), and asked for an evidentiary hearing. The Board accepted the petition for review but declined to convene an evidentiary hearing. See In re USGen New Eng., Inc. Brayton Point Station, 11 E.A.D. 525, 525 (EAB July 23, 2004).

On August 11, 2004, Dominion notified the EPA of its intent to file a citizen's suit under section 505(a)(2) of the CWA, 33 U.S.C. § 1365(a)(2), to compel the Board to hold an evidentiary hearing. Receiving no reply, Dominion proceeded to file its complaint in the United States District Court for the District of Massachusetts. The EPA moved to dismiss.

The district court granted the motion on jurisdictional grounds. See Fed. R. Civ. P. 12(b)(1). In a bench decision, it concluded that it was without subject matter jurisdiction because the suit, though billed as a citizen's suit, constituted a direct challenge to the EPA's hearing rule and, thus, came within the exclusive jurisdiction of the circuit court under 33 U.S.C. § 1369(b)(1)(E). This timely appeal followed.[1]

## II. THE LEGAL LANDSCAPE

We set the stage for our substantive discussion by undertaking a brief review of the legal rules that frame the controversy at hand.

Before the EPA either issues an NPDES permit or authorizes a thermal variance,[2] it must offer an "opportunity for public hearing." 33 U.S.C. §§ 1326(a), 1342(a). No definition of "public hearing" is contained within the four corners of the CWA.

---

[1]During the pendency of this appeal, the Board issued its merits decision. For the most part, the Board found no clear error in the permit proceedings. It did, however, order a limited remand. See In re Dominion Energy Brayton Point, L.L.C. Brayton Point Station, NPDES 03-12, slip op. at 5-7 (EAB Feb. 1, 2006). That decision has no bearing on the issues before us.

[2]Although it is unclear whether Dominion requested an evidentiary hearing under section 402(a) or section 316(a) of the CWA, that distinction has no bearing on our analysis. See Seacoast, 572 F.2d at 875 n.3. The fact that Dominion is seeking a permit renewal rather than a new permit is equally irrelevant; in either event, the application procedure is the same. See 40 C.F.R. §§ 122.21(d), 124.3.

The Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq., is also part of the relevant legal landscape. Most pertinent here are those sections that combine to describe the procedures for formal administrative adjudications. See id. §§ 554, 556, 557. These procedures apply "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." Id. § 554(a). The APA does not directly address whether these procedures apply when a statute simply calls for an "opportunity for public hearing" without any specific indication that the hearing should be "on the record."

In Seacoast, this court interpreted "public hearing" (as used in sections 402(a) and 316(a) of the CWA) to mean "evidentiary hearing" — in other words, a hearing that comports with the APA's requirements for a formal adjudication. 572 F.2d at 878. Examining the legislative history of the APA, we adopted a presumption that "unless a statute otherwise specifies, an adjudicatory hearing subject to judicial review must be [an evidentiary hearing] on the record." Id. at 877. Applying that presumption to the CWA, we concluded that "the statute certainly does not indicate that the determination need not be on the record." Id. at 878 (emphasis in original).

So viewed, Seacoast established a rebuttable presumption that, in the context of an adjudication, an organic statute that calls for a "public hearing" should be read to require an

-5-

evidentiary hearing in compliance with the formal adjudication provisions of the APA. Two other circuit courts reached the same conclusion, albeit through different reasoning. See Marathon Oil Co. v. EPA, 564 F.2d 1253, 1264 (9th Cir. 1977); U.S. Steel Corp. v. Train, 556 F.2d 822, 833-34 (7th Cir. 1977). Acquiescing in this construction, the EPA promulgated regulations that memorialized the use of formal evidentiary hearings in the NPDES permit process. See NPDES; Revision of Regulations, 44 Fed. Reg. 32,854, 32,938 (June 7, 1979).

In 1984, a sea change occurred in administrative law and, specifically, in the interpretation of organic statutes such as the CWA. The Supreme Court held that "[w]hen a court reviews an agency's construction of the statute which it administers," the reviewing court first must ask "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. If Congress's intent is clear, that intent governs — both the court and the agency must give it full effect. Id. at 842-43. If, however, Congress has not directly addressed the question and the agency has stepped into the vacuum by promulgating an interpretive regulation, a reviewing court may "not simply impose its own construction on the statute," but, rather, ought to ask "whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

This paradigm, sometimes called the Chevron two-step, increases the sphere of influence of agency action. If congressional intent is unclear and an agency's interpretation of a statute that it administers is reasonable, an inquiring court must defer to that interpretation. See id. at 843-44. That is so even if the agency's interpretation is not the one that the court considers to be the best available interpretation. See id. at 843.

Armed with the Chevron decision and a presidential directive to streamline regulatory programs, see Remarks on Regulatory Reform, 31 Weekly Comp. Pres. Doc. 278 (Feb. 21, 1995), the EPA advanced a proposal to eliminate formal evidentiary hearings from the NPDES permitting process. See Amendments to Streamline the NPDES Program Regulations: Round Two, 61 Fed. Reg. 65,268, 65,276 (Dec. 11, 1996). In due course, the EPA adopted that proposal as a final rule. See Amendments to Streamline the NPDES Program Regulations: Round Two, 65 Fed. Reg. 30,886, 30,900 (May 15, 2000).

This revision depended heavily on a Chevron analysis. The agency began by "finding no evidence that Congress intended to require formal evidentiary hearings or that the text [of section 402(a)] precludes informal adjudication of permit review petitions." Id. at 30,896. Then, it weighed the risks and benefits of employing informal hearing procedures for NPDES permit review, "determining that these procedures would not violate the

Due Process Clause." Id. Finally, it "concluded that informal hearing procedures satisfy the hearing requirement of section 402(a)." Id.

It was under this new regulatory scheme that the EPA considered Dominion's request to renew its NPDES permit and to authorize a thermal variance. Thus, it was under this scheme that the EPA denied Dominion's request for an evidentiary hearing.

## III. ANALYSIS

The court of appeals reviews a dismissal for want of subject matter jurisdiction de novo. Gabriel v. Preble, 396 F.3d 10, 12 (1st Cir. 2005). In doing so, the court accepts the well-pleaded factual allegations of the plaintiff's complaint and indulges all reasonable inferences in the plaintiff's favor. Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). The appellate court is not wedded to the lower court's reasoning, but may affirm the order of dismissal on any ground fairly presented by the record. See InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

Here, Dominion's claim on appeal rests on the premise that it has satisfied the jurisdictional requirements for a citizen's suit under section 505(a)(2) of the CWA. Subject to a notice requirement — suit may not be commenced "prior to sixty days after the plaintiff has given notice of such [proposed] action," 33 U.S.C. § 1365(b)(2) — the statute invoked by Dominion grants

-8-

federal district courts jurisdiction over any citizen's suit brought "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under [the CWA] which is not discretionary," id. § 1365(a)(2). There is no question but that Dominion satisfied the applicable notice requirement. The crux of the case, therefore, is whether Dominion has pleaded the flouting of a non-discretionary duty.

One thing is crystal clear: on their face, the current EPA regulations do not establish a non-discretionary duty to provide the evidentiary hearing that Dominion seeks. Prior to the date of Dominion's request, the EPA vitiated the preexisting rule introducing evidentiary hearings into the NPDES permitting process. See 40 C.F.R. § 124.21(b) (explaining that the "EPA eliminated the previous requirement for NPDES permits to undergo an evidentiary hearing after permit issuance . . . on June 14, 2000"). Dominion concedes this fact, but nonetheless relies on Seacoast as the source of a non-discretionary duty to convene an evidentiary hearing.

This reliance is misplaced. Even if Seacoast established a non-discretionary duty for section 505(a)(2) purposes when it was decided — a matter upon which we need not opine — Dominion's position ignores two important post-Seacoast changes in the legal landscape: the Supreme Court's decision in Chevron and the agency's

subsequent promulgation of the current "no evidentiary hearing" rule.

We anticipated this situation in <u>Citizens Awareness Network, Inc.</u> v. <u>United States</u>, 391 F.3d 338 (1st Cir. 2004), in which we noted that "while the type of hearing required by a statute turns on congressional intent, <u>Chevron</u> adds a new dimension, requiring that the agency's reasonable interpretation be accorded deference if there is any ambiguity as to that intent." <u>Id.</u> at 348 n.4. We also recognized <u>Chevron</u>'s possible ramifications for <u>Seacoast</u>, but did not have the occasion to confront the issue squarely. <u>See</u> <u>id.</u> (reserving the question "[t]o what extent (if at all) [<u>Chevron</u>] erodes <u>Seacoast</u>'s rationale"). Now, with guidance from the Supreme Court's last term lighting our path, we address the matter and conclude that, as to the CWA's public hearing language, the <u>Chevron</u> doctrine trumps the potential application of stare decisis principles.

For present purposes, the critical precedent is <u>National Cable & Telecommunications Ass'n</u> v. <u>Brand X Internet Services</u>, 125 S. Ct. 2688 (2005). There, the Court examined the relationship between the stare decisis effect of an appellate court's statutory interpretation and the <u>Chevron</u> deference due to an administrative agency's subsequent, but contrary, interpretation. Echoing <u>Chevron</u>, the Court reiterated that "[f]illing [statutory] gaps . . . involves difficult policy choices that agencies are better

-10-

equipped to make than courts." Id. at 2699. Then, concluding that Chevron's application should not turn on the order in which judicial and agency interpretations issue, the Justices held squarely that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." Id. at 2700. This approach "hold[s] judicial interpretations contained in precedents to the same demanding Chevron . . . standard that applies if the court is reviewing the agency's construction on a blank slate." Id.

Brand X demands that we reexamine pre-Chevron precedents through a Chevron lens. The Chevron two-step applies. At the first step, a court "must look primarily to the plain meaning of the statute, drawing its essence from the particular statutory language at issue, as well as the language and design of the statute as a whole." Strickland v. Comm'r, Me. Dep't of Human Servs., 48 F.3d 12, 16 (1st Cir. 1995) (citation and internal quotation marks omitted). At this step, the court may "examine the legislative history, albeit skeptically, in search of an unmistakable expression of congressional intent." Id. at 17. If the precedent at issue finds clarity at step one — that is, if the holding of the case rests on a perception of clear and unambiguous

congressional intent — that precedent will govern.  See Brand X, 125 S. Ct. at 2700.  If, however, the precedent operates at Chevron step two — that is, if the case holds, in effect, that congressional intent is less than pellucid and proceeds to choose a "best reading" rather than "the only permissible reading," id. at 2701 (emphasis in original) — its stare decisis effect will, through Chevron deference, yield to a contrary but plausible agency interpretation, see id. at 2700.

Once this mode of analysis is understood and applied, Dominion's argument collapses.  Seacoast simply does not hold that Congress clearly intended the term "public hearing" in sections 402(a) and 316(a) of the CWA to mean "evidentiary hearing."  To the contrary, the Seacoast court based its interpretation of the CWA on a presumption derived from the legislative history of the APA — a presumption that would hold sway only in the absence of a showing of a contrary congressional intent.  Seacoast, 572 F.2d at 877-78.  In other words, the court resorted to the presumption only because it could find no sign of a plainly discernible congressional intent.  Id. at 878.  A statutory interpretation constructed on such a negative finding is antithetic to a conclusion that Congress's intent was clear and unambiguous.

The short of it is that the Seacoast court, faced with an opaque statute, settled upon what it sensibly thought was the best construction of the CWA's "public hearing" language.  Such a

-12-

holding is appropriate at step two of the Chevron pavane, not at step one. Consequently, under Brand X, Seacoast must yield to a reasonable agency interpretation of the CWA's "public hearing" requirement. See Brand X, 125 S. Ct. at 2700.

The only piece left to this puzzle is to confirm that the EPA's new regulations are, in fact, entitled to Chevron deference. This inquiry is a straightforward one. As our earlier discussion suggests (and as the Seacoast court correctly deduced), Congress has not spoken directly to the precise question at issue here. See, e.g., United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 239 (1973) ("The term 'hearing' in its legal context undoubtedly has a host of meanings."); Chem. Waste Mgmt., Inc. v. U.S. EPA, 873 F.2d 1477, 1480-82 (D.C. Cir. 1989) (concluding that Congress's intent behind the words "public hearing" in section 3008 of the RCRA was ambiguous for Chevron purposes). Accordingly, we must defer to the EPA's interpretation of the CWA as long as that interpretation is reasonable. See Chevron, 467 U.S. at 843-44.

In this instance, the administrative interpretation took into account the relevant universe of factors. See 65 Fed. Reg. at 30,898-30,900 (considering "(1) [t]he private interests at stake, (2) the risk of erroneous decision-making, and (3) the nature of the government interest," and concluding that its new regulation was a reasonable interpretation of the CWA); see also Chem. Waste Mgmt., 873 F.2d at 1483 (concluding that the EPA's choice of

informal adjudicatory procedures under RCRA was reasonable). The agency's conclusion that evidentiary hearings are unnecessary and that Congress, in using the phrase "opportunity for public hearing," did not mean to mandate evidentiary hearings seems reasonable — and Dominion, to its credit, has conceded the point.

Dominion makes two final attempts to resuscitate Seacoast. First, it asseverates that a refusal to follow Seacoast offends the "law of the circuit" rule. That rule (a branch of the stare decisis doctrine) holds that, "[o]rdinarily, newly constituted panels in a multi-panel circuit should consider themselves bound by prior panel decisions" closely on point. Eulitt v. Me., Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004). However, the "law of the circuit" rule, like most rules of general application, is subject to exceptions. One such exception "comes into play when a preexisting panel opinion is undermined by subsequently announced controlling authority, such as a decision of the Supreme Court." Id. In this instance, the Supreme Court's decisions in Chevron and Brand X counsel against a mechanical application of Seacoast.

Second, Dominion exhorts us to find that Seacoast's holding is actually an interpretation of the APA, not the CWA (and, therefore, the EPA's regulation is also an interpretation of the APA, not entitled to Chevron deference). See, e.g., Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 137 n.9 (1997) (noting that

-14-

<u>Chevron</u> deference is inappropriate vis-à-vis an agency interpretation of the APA's burden-of-proof provision). Such a reading of <u>Seacoast</u> is plainly incorrect. While the <u>Seacoast</u> court relied on a presumption borrowed from the APA, the court's holding is an interpretation of the CWA and, specifically, of the term "public hearing" contained in sections 402(a) and 316(a). The EPA's regulations are also derived from the CWA. <u>See</u> 40 C.F.R. § 122.1(a) (explaining that 40 C.F.R. § 124 implements sections of the CWA). Because those changes implicate the statute that the EPA administers (i.e., the CWA), <u>Chevron</u> deference is appropriate. <u>See</u> <u>Chevron</u>, 467 U.S. at 842-43.

## IV. CONCLUSION

We summarize succinctly. Although we in no way disparage the soundness of <u>Seacoast</u>'s reasoning, the <u>Chevron</u> and <u>Brand X</u> opinions and the interposition of a new and reasonable agency interpretation of the disputed statutory language have changed the picture. Because we, like the <u>Seacoast</u> court, cannot discern a clear and unambiguous congressional intent behind the words "public hearing" in the CWA and because the EPA's interpretation of that term constitutes a reasonable construction of the statute, deference is due. It follows inexorably that no non-discretionary duty to grant Dominion an evidentiary hearing on its permit application exists. Consequently, the jurisdictional requirements of section 505(a)(2) have not been satisfied.

-15-

We need go no further.[3]  For the reasons elucidated above, we conclude that the district court did not err in dismissing Dominion's action.

**Affirmed**.

---

[3]Given this outcome, we need not address whether this suit is properly characterized as a direct challenge to the EPA's rule (and, thus, barred by 33 U.S.C. § 1369(b)(1)(E)).