**Arthur HARVEY, Plaintiff**

v.

**Mike JOHANNS, Secretary of Agriculture, Defendant.**

**Civil No. 02–216–P–H.**

United States District Court, D. Maine.

Nov. 2, 2006.

---

Martica S. Douglas, Christine Kennedy–Jensen, Douglas, Denham, Buccina & Ernst, Portland, ME, Paula Dinerstein, Public Employees For Environmental Responsibility, Washington, DC, for Plaintiff.

Halsey B. Frank, Assistant United States Attorney, Portland, ME, for Defendant.

## MEMORANDUM DECISION ON MOTION TO ENFORCE JUDGMENT AND CROSS MOTION FOR RELIEF FROM JUDGMENT

HORNBY, District Judge.

The latest installment of this dispute under the Organic Foods Production Act ("OFPA") of 1990, 7 U.S.C. § 6501 *et seq.*, presents two questions: (1) Has an intervening Act of Congress relieved the Secretary of Agriculture from complying with a consent decree to which the Secretary previously acceded? (2) Is the plaintiff requesting relief beyond the scope of the

consent decree and his original lawsuit? I conclude that the answer to both is yes. I therefore DENY the plaintiff's motion to enforce judgment and GRANT the Secretary's motion for relief from judgment.

## PROCEDURAL HISTORY

Magistrate Judge Kravchuk and I ruled initially on the plaintiff Harvey's challenge to Department of Agriculture ("UDSA") regulations. *Harvey v. Veneman*, No. 02–cv–216–P–H, 2003 WL 22327171 (D.Me. Oct. 10, 2003); *Harvey v. Veneman*, 297 F.Supp.2d. 334 (D.Me.2004) (order granting summary judgment). In 2005, the First Circuit reversed us as to Count 3 of Harvey's Complaint. It declared that two USDA regulations, 7 C.F.R. §§ 205.600(b) and 605(b), were "contrary to the plain language of OFPA and therefore exceed the Secretary's statutory authority." *Harvey v. Veneman*, 396 F.3d 28, 40 (1st Cir. 2005). On remand, the plaintiff and the Secretary agreed upon relief. Accordingly, on June 9, 2005, I entered the Final Judgment that they proposed. Consent Final Judgment and Order, No. 02–cv–216–P–H (Docket Item 88) (Consent Decree). That consent decree ordered the Secretary to revise the regulations within 360 days, a time period that now has passed. *Id.* at 4.

In the meantime, in November 2005, Congress amended the OFPA in the 2006 Agricultural Appropriations bill through language added in conference committee without recorded discussion or debate. Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 2006, Pub.L. No. 109–97, 119 Stat. 2120 (2005). The Secretary maintains that the amendment corrected the statutory language upon which the First Circuit relied to invalidate the regulations in *Harvey*. The Secretary, therefore, has declined to revise the original regulations. In the agency statement accompanying the final rule implementing other portions of the judgment in *Harvey*, the Secretary explained:

> Congress amended the OFPA by permitting the addition of synthetic substances appearing on the National List for use in products labeled "organic." The amendment restores the [invalidated regulations].... Therefore, USDA is not revising the [ ] regulations to prohibit the use of synthetic ingredients in processed products labeled as organic....

71 Fed.Reg. 32803, 32803–04 (June 7, 2006) (to be codified at 7 C.F.R. pt. 205).

As a result, Harvey has moved to enforce and the Secretary has moved to vacate a portion of the Consent Decree. Harvey has also asked that I order the USDA to revoke or revise its 2002 Policy Statement on food contact substances. He complains that the Policy Statement permits the use of food contact substances in organic foods without proper review. The Secretary responds that this request is for new relief not encompassed by either the Consent Decree or the original lawsuit.

## ANALYSIS

### (1) The 2005 OFPA amendments supersede the Consent Decree and Final Judgment in this case.

A court has power to enforce its judgment. *U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 496 (1st Cir. 2000). But a court is also permitted to grant relief from a final judgment if "it is no longer equitable that the judgment should have prospective application." Fed. R.Civ.P. 60(b)(5). Supreme Court precedent makes clear that subsequent legislation changing the law upon which a decree originally was based is just such a case. *Pennsylvania v. Wheeling & Belmont*

*Bridge Co.,* 59 U.S. 421, 432, 18 How. 421, 15 L.Ed. 435 (1855) ("since the decree, this right has been modified by [Congress], so that ... it is quite plain the decree of the court can not be enforced"). The First Circuit has said that the *Wheeling Bridge* approach "is not only mandated by precedent but also makes logical sense." *Inmates of Suffolk County v. Rouse,* 129 F.3d 649, 656 (1st Cir.1997) ("a forward-looking judgment in equity can succumb to legislative action if the legislature alters the underlying rule of law"). Therefore, the decision whether to enforce or vacate the pertinent provision of the Consent Decree here depends upon the meaning and effect of the 2005 OFPA amendments.

The challenged regulations that the First Circuit struck down have permitted the use of synthetic substances in the handling of organic foods. Regulation section 205.600(b) provides that synthetic substances may be used "as a processing aid or adjuvant" if they meet six criteria. 7 C.F.R. § 205.600(b). Regulation section 205.605(b) is the so-called National List of synthetics permitted in organic products, including ingredients, processing aids, and other types of substances. 7 C.F.R. § 205.605(b).

The First Circuit invalidated the regulations because of statutory language appearing in 7 U.S.C. §§ 6510 and 6517. Before the 2005 amendments, section 6510(a)(1) provided that certified handling operations for organic food "shall not, with respect to any agricultural product covered by this chapter ... add any *synthetic ingredient* during the processing or any postharvest *handling* of this product." (Emphasis added). The relevant part of section 6517(c)(1) provided:

> The National List may provide for the use of substances in an organic farming or handling operation that are otherwise prohibited under this title only if ... (B) the substance.... (iii) is used in han-

dling and is *non-synthetic* but is not organically produced....

(Emphasis added). The First Circuit held that these two sections prohibited the use of synthetic substances in the handling of organically labeled products. 396 F.3d at 39. Upon remand to this court, the parties agreed upon the text of a consent decree and final judgment and I entered it accordingly: "7 C.F.R. §§ 205.600(b) and 605(b) are contrary to the OFPA and exceed the Secretary's rulemaking authority to the extent that they permit the addition of *synthetic ingredients and processing aids in handling* ..." Consent Decree at 3 (emphasis added).

The OFPA amendments in 2005 made three relevant changes to the statute. Congress added language to section 6510 to limit the scope of its prohibition on synthetic ingredients. Now section 6510 prohibits only the addition of "any synthetic ingredient *not appearing on the National List* during processing or any post harvest handling of the product" (emphasis on language added by amendment). Congress also demonstrated its intent to allow the National List to exempt substances used in handling by changing the title to section 6517(c)(1). Now it reads: "Exemption for prohibited substances *in organic production and handling operations*" (emphasis on language added by amendment). Congress also eliminated the language of subsection 6517(c)(1)(B)(iii) altogether. This is the language I quoted above that the First Circuit relied upon in striking down the regulations, language that previously provided that a substance had to be non-synthetic in order to be listed for use in handling operations.

Congress's objective in making these amendments is clear: synthetic substances can be permitted in handling.

But Harvey argues that the amendments only address synthetic ingredients, whereas the consent decree clearly prohib-

ited the use of both synthetic ingredients and processing aids. Pl.'s Mot. to Enforce the Judgment ("Mot. to Enforce") at 2 (Docket Item 89). He points to the fact that section 6504(1) prohibits the use of any synthetic substance in handling "except as otherwise provided in this chapter," 7 U.S.C. § 6504(1), and argues that although the OFPA amendments may have "otherwise provided for" the use of synthetic ingredients in handling, nothing in the amendments has authorized the use of synthetic processing aids. USDA regulations define "ingredients" and "processing aids" separately,[1] and, according to Harvey, "Congress could have included processing aids in its amendments if it had chosen do so." Pl.'s Reply at 9 (Docket Item 106). "[I]t must be assumed," Harvey contends, "that Congress' choice of the term 'ingredients' was intentional and means what it says." Mot. to Enforce at 8. Therefore, he concludes, the 2005 amendments "otherwise provide" for the use of synthetic ingredients in handling, but not synthetic processing aids.

I am not persuaded. First, Harvey relies on a distinction between "processing aid" and "ingredient" that appears nowhere in the statute either before or after the 2005 amendments. *See* 7 U.S.C. § 6502 (no definition of "ingredient" or "processing aid"); *see also* 7 U.S.C. § 6501 *et. seq.* (no mention of "processing aid" in the statute).[2] Second, the OFPA amendment did not add the word "ingredient" to the statute; the word "ingredient" was already there, and the First Circuit's decision in *Harvey* dealt with that language. In the 2005 amendments, Congress simply inserted the words "appearing on the National List" after the word "ingredient" in section 6510. Harvey's claim that Congress intentionally chose the word "ingredient" as distinct from "processing aid" is farfetched.

Third, Harvey's focus on the distinction between "ingredients" and "processing aids" made in the consent decree is misplaced. He argues that Congress "must be presumed to have been aware of the terms of the Judgment it was purportedly responding to, which directed USDA to revise its regulations to prohibit synthetic ingredients *and* processing aids." Pl.'s Reply at 9. (emphasis original). Much as it might be flattering to think that Congress concerned itself with what appeared over my signature, it is the decision of the regional court of appeals, the First Circuit, that concerned Congress. Congress actually named the First Circuit decision. It directed the Secretary to "conduct an evaluation of any impacts of the court decision in *Harvey v. Veneman*, 396 F.3d 28 (1st Cir.Me.2005)." Pub.L. No. 109–97, § 724, 119 Stat. 2120, 2153 (2005). And, unlike the consent decree, the First Circuit opinion did not focus on the distinction between ingredients and processing aids.

---

**1.** "Ingredient" is defined by USDA regulations as: "Any substance used in the preparation of an agricultural product that is still present in the final commercial product as consumed." 7 C.F.R. § 205.2 (2006). "Processing aid" is defined as:

(1) [a][s]ubstance that is added to a food during the processing of such food but is removed in some manner from the food before it is packaged in its finished form; (2) a substance that is added to a food during processing, is converted into constituents normally present in the food, and does not significantly increase the amount of the constituents naturally found in the food; and (3) a substance that is added to a food for its technical or functional effect in the processing but is present in the finished food at insignificant levels and does not have any technical or functional effect in that food.

*Id.*

**2.** Though the term "processing aid" is not used in the statute, the term "processing" is used and defined by 7 U.S.C. § 6502(17).

What is more, the First Circuit actually did distinguish between ingredients and processing aids when it first rendered its decision in January 2005. It stated: "The challenged regulations, which permit the use of certain synthetic substances 'as processing aids,' thus contravene the plain language of the Act as well." *Harvey v. Veneman,* 396 F.3d 28, 39 (1st Cir.2005).[3] But Harvey was concerned that on Count 3, which he won on appeal, the First Circuit had ruled too broadly and prohibited certain practices he did not want to attack, such as the use of synthetic substances in handling operations like packaging and storage.[4] He therefore filed a motion to clarify the judgment and the Secretary did not object. *See* Motion to Clarify at 13. The First Circuit then made a number of changes to its opinion including deleting the sentence referring to processing aids. Order Adopting Errata, *Harvey v. Veneman,*. In the end, its revised opinion did not focus on the distinction between "ingredients" and "processing aids" at all. 396 F.3d 28, 39 (1st Cir.2005). It should be unremarkable that thereafter Congress also did not mention the term "processing aids" in seeking to change the statute to deal with the First Circuit's interpretation.

In the end, Harvey's statutory argument comes down to the assertion that Congress should have inserted the word "processing aid" in section 6510 if it meant to allow the use of synthetic processing aids in handling. I disagree. The amendment to

section 6510 simply clarifies that the old prohibition on the use of synthetic ingredients in handling no longer applies to the use of *synthetic ingredients appearing on the National List.* To use Harvey's words, "Section 6510 is by its terms applicable only to the addition of ingredients," Motion to Clarify at 10–11, and says nothing one way or another about processing aids. Congress authorized the use of synthetic processing aids in handling with its amendments to section 6517. As noted above, Congress amended the title of the subsection so that it now reads "[e]xemption for prohibited *substances* in organic production and handling operations." 7 U.S.C. § 6517(c)(1) (Emphasis added). The text then provides: "The National List may provide for the use of substances in an organic ... handling operation that are otherwise prohibited under this chapter" and lists the conditions for such use. *Id.* Congress struck from the text the provision that the First Circuit relied on in *Harvey* to invalidate the use of synthetics in handling under this section.[5] Thus, section 6517 now authorizes the use of synthetic substances, whether ingredients or processing aids, for use in handling operations so long as they appear on the National List.[6]

I therefore conclude that the 2005 amendments eliminated the First Circuit's statutory basis for holding the regulations in question invalid. As a result, the Final Judgment with regard to Count 3 is Moot

---

3. The original opinion was not published in the Federal Reporter but can be found at the First Circuit website (http://www.ca1.uscourts.gov/), Case No. 04–1379. A copy of the opinion is attached to the Defendant's Opposition (Docket Item 94, Attachment 1).

4. Pl.'s Mot. for Clarification of Decision and Stay of Mandate, *Harvey v. Veneman,* No. 04–1379 (1st Cir. Mar. 14, 2005) at 9–12 (Motion to Clarify).

5. 7 U.S.C. § 6517(c)(1)(B)(iii) (2004) ("is used in handling and is non-synthetic but is not organically produced") (Repealed 2005).

6. Harvey urges the court to interpret section 6517, as amended, "solely upon its plain language." Mot. to Enforce at 5. He says, "The amendments to § 6517 merely reflect that some synthetics are to be allowed in handling. While the prohibition on adding synthetics in handling to the National List has been removed, there is no further guidance in section 6517 as to what kind of synthetic substances

and cannot be enforced. *See* 13A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (2d ed. 1984) ("If it is concluded that new legislation was specifically intended to resolve the questions raised by pending litigation, a court may find that the dispute is moot....")

### (2) *Harvey's Claim about the Food Contact Substance Policy Statement exceeds the bounds of the consent decree and the lawsuit.*

 According to Harvey, a 2002 USDA Policy Statement currently posted on the National Organic Program website "permits the use in organic foods of 'food contact substances' ... without review for inclusion on the National List." Mot. to Enforce at 3.[7] Harvey asks this Court to "order USDA to revoke or revise its FCS Policy Statement" because "its existence violates this Court's Judgment." Pl.'s Reply at 22, 20.

In part, Harvey's attack on the FCS policy statement is an extension of the argument that I have just rejected. He says: "the [2005] OFPA amendment did not reach synthetic processing aids, and thus the Court's Judgment remains in effect as to them." Pl.'s Reply at 17. Because I have rejected Harvey's underlying premise, this portion of the attack fails.

To the extent Harvey's attack is broader, I do not see how this USDA policy, whether consistent with the OFPA or not, is subject to a motion to enforce a final judgment and order that did not mention it, ordering compliance with a First Circuit decision that did not consider it.[8] *Cf. Fafel v. Dipaola,* 399 F.3d 403, 411 (1st Cir.2005) ("because enforcement jurisdiction is a 'creature of necessity,' it extends only as far as required to effectuate a judgment"). Such a review would require a factual record that is not before this court. The Judgment with respect to count 3 applied only to 7 C.F.R. §§ 205.600(b) and 605(b). It has been mooted by the OFPA amendments. I decline to render any judgment on the validity of the FCS policy statement because it was not raised in the Complaint, not ruled upon by the First Circuit, and not covered by this Court's Judgment upon remand. It is, therefore, beyond the scope of a motion to enforce.

Accordingly, I **GRANT** the Secretary's Cross Motion for Relief from Judgment under Rule 60(b). I **DENY** Harvey's Motion to Enforce the Judgment.

**SO ORDERED.**

---

in handling may be permitted." *Id.* at 9 n. 12. I disagree. The history of this litigation, the timing and character of the amendments, and the reference to the First Circuit opinion in the appropriations bill, together make it apparent that Congress authorized the use of synthetic substances in handling operations so long as they appear on the National List.

7. Congress defines Food Contact Substances ("FCS") as "any substance intended for use as a component of materials used in manufacturing, packing, packaging, transporting or holding food if such use is not intended to have any technical effect in such food." 21 U.S.C. § 348(h)(6).

8. Harvey concedes that the Food Policy Statement was not addressed in either the First Circuit Opinion or the consent Final Judgment and Order in this case. Pl.'s Reply at 20. If Harvey is asking me to apply the amended language of the OFPA, such a claim would require a new lawsuit. *See Center for National Policy Review on Race & Urban Issues v. Richardson,* 534 F.2d 351, 352–53 (D.C.Cir.1976) ("[T]he amendment 'created a new cause of action necessitating a new complaint.... The other case and controversy, involving, as it did, a different statute, is completed.' ").