# United States Court of Appeals

## For the First Circuit

No. 06-2738

ARTHUR HARVEY,

Plaintiff, Appellant,

v.

MIKE JOHANNS, SECRETARY OF AGRICULTURE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lipez and Newman[*], Circuit Judges,
and Selya, Senior Circuit Judge.

Paula Dinerstein, with whom Public Employees for Environmental Responsibility was on brief, for appellant.
Halsey B. Frank, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.
William J. Friedman, with whom Richard D. Dietz and Covington & Burling LLP were on brief, for Organic Trade Association, International Dairy Foods Association, and United Fresh Produce Association, amici curiae.

July 24, 2007

---

[*]The Honorable Pauline Newman, of the Federal Circuit, sitting by designation.

**SELYA**, <u>Senior Circuit Judge</u>. This appeal has many of the characteristics of a civics lesson. One principal characteristic is that it offers a window on the interaction of the three branches that comprise our tripartite system of government. The lesson began when the Legislative Branch — Congress — enacted a consumer protection statute. It continued when the Executive Branch — in the person of the Secretary of Agriculture (the Secretary) — promulgated implementing regulations under that statute. It soon implicated the Judicial Branch, where this court ultimately passed upon the validity of the regulations and found that some of them conflicted with the plain language of the statute.

That was not the end of the lesson; Congress, apprised of our decision, amended the statute in an obvious effort to save some of the challenged regulations. It now falls to us to determine whether the amended statute and the original regulations can coexist.

The specifics of the situation are easily summarized. In <u>Harvey</u> v. <u>Veneman</u>, 396 F.3d 28 (1st Cir. 2005) (<u>Harvey I</u>), we reviewed several regulations promulgated by the Secretary under the Organic Foods Production Act (OFPA), 7 U.S.C. §§ 6501-6523 (2000). We declared a number of those regulations invalid and gave others limiting constructions. Congress responded to this opinion by passing a series of amendments to the OFPA. The central issue in

this appeal involves the extent to which those amendments vitiate our earlier invalidation of two such regulations.

## I. BACKGROUND

The OFPA establishes a national certification program for producers and handlers of organic products and regulates the labeling of such products. See 7 U.S.C. §§ 6503(a), 6504, 6505(a)(1)(A). As a general matter, an agricultural product must be produced and handled without the use of synthetic substances in order to be labeled or sold as organic. See id. §§ 6504, 6505, 6510. Nevertheless, the OFPA contemplates that there will be a National List through which non-organic substances can be approved for use in organic products. Id. § 6517. The statute specifies the types of substances that can be included on the National List and limns a procedure for obtaining inclusion of substances. See id. It also authorizes the Secretary to promulgate implementing regulations. Id. § 6521.

In December of 2000, the Secretary published a final rule pursuant to that power. See 7 C.F.R. pt. 205. Plaintiff-appellant Arthur Harvey took umbrage with various aspects of the final rule, which he viewed as overly tolerant of non-organic substances. Thus, in 2002, he filed suit in Maine's federal district court seeking declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702.

The appellant's nine-count complaint alleged that several provisions of the final rule were inconsistent with the OFPA and impermissibly diluted its organic standard. The only claims relevant to this appeal are those embodied in count 3. That count alleged that two sections of the final rule, 7 C.F.R. §§ 205.600(b) and 205.605(b),[1] contravened OFPA § 6510(a)(1) by too freely permitting the use of synthetic substances in the processing of organic foods.

For present purposes, the travel of the case in the district court is of no moment. What happened on appeal is, however, of decretory significance. There, we agreed with the appellant as to the gist of count 3 and invalidated both of the challenged regulations. See Harvey I, 396 F.3d at 40. We based this decision on our interpretation of OFPA § 6510(a)(1), which we described as "a general prohibition against adding synthetic ingredients in handling operations." Id. at 39. In rejecting the Secretary's argument that the National List provision authorized the agency to create such exemptions, we noted that section 6517(c)(1)(B)(iii) allowed inclusion on the National List of an otherwise prohibited substance for use in handling only if the substance "[was] non-synthetic." Id. This led to the conclusion

---

[1]Section 205.600(b) lists six criteria to be used in determining whether a synthetic "processing aid or adjuvant" should be included on the National List. Section 205.605(b) enumerates synthetic substances already approved for inclusion on the National List.

that section 6517(c)(1)(B)(iii) "simply [did] not say what the Secretary need[ed] it to say."  Id.  Because the regulations challenged in count 3 were contrary to the plain language of the OFPA, we ruled that the Secretary had exceeded her statutory authority.  Id. at 40.

On remand, the parties agreed upon a consent decree and final judgment, which the district court entered on June 9, 2005. The judgment purposed to remand the matter to the Secretary to "conduct notice and comment rulemaking and to publish in the federal register final rules implementing [the court's order] with regard to Count 3."  The judgment gave the Secretary a one-year period within which to develop new regulations.

Before the Secretary took responsive action, Congress intervened.  In November of 2005, Congress amended the OFPA.  See Pub. L. No. 109-97, § 797, 119 Stat. 2120, 2165 (2005) [hereinafter 2005 Amendments].  In so doing, it added language to section 6510 authorizing the use in handling operations of synthetic ingredients appearing on the National List.[2]  Congress simultaneously modified

---

[2]Section 6510(a), with the newly added language underscored, now provides in relevant part:
   (a) In general.  For a handling operation to be certified under this title . . . , each person on such handling operation shall not, with respect to any agricultural product covered by this title . . .
   (1) add any synthetic ingredient not appearing on the National List during the processing or any postharvest handling of the product.
7 U.S.C. § 6510(a)(1).

-5-

section 6517 in two respects.  First, it changed the subtitle of section 6517(c)(1) to clarify that the National List relates to processing and handling as well as to production.[3]  Second, it eliminated subsection 6517(c)(1)(B)(iii), the provision that we had singled out as limiting the inclusion of non-organic substances used in handling to non-synthetics.  See Harvey I, 396 F.3d at 39.  No legislative history accompanied these alterations.  Finally, Congress directed the Secretary to prepare a report detailing the impact of Harvey I and describing whether restoring OFPA's regulatory scheme to its pre-Harvey I status would negatively impact farmers, processors, or consumers.  2005 Amendments, § 724, 119 Stat. at 2153.

The Secretary proceeded to revise the final rule to comply with other aspects of the judgment in Harvey I.  See 71 Fed. Reg. 32,803 (June 7, 2006).  With regard to the subject matter of count 3, however, the Secretary stated:

> Congress amended the OFPA by permitting the addition of synthetic substances appearing on the National List for use in products labeled "organic."  The amendment restores the NOP regulation for organic processed products containing at least 95 percent organic ingredients on the National List and their ability to carry the USDA seal.  Therefore, the

---

[3]Section 6517(c)(1), with the newly added language underscored, now provides in relevant part:
    The National List may provide for the use of substances in an organic farming or handling operation that are otherwise prohibited under this title . . . .
7 U.S.C. § 6517(c)(1).

> USDA is <u>not</u> revising the NOP regulations to prohibit the use of synthetic ingredients in processed products labeled as organic nor restrict these products' eligibility to carry the USDA seal.

<u>Id.</u> at 32,804.

This statement displeased the appellant. On June 30, 2006, he asked the district court to enforce the judgment vis-à-vis count 3. The Secretary opposed this motion and cross-moved for relief from the judgment. The essence of the Secretary's position was that the 2005 Amendments had made any revisions to the regulations in question unnecessary.

The district court denied the appellant's motion to enforce and granted the Secretary's cross-motion for relief from judgment. <u>Harvey</u> v. <u>Johanns</u>, 462 F. Supp. 2d 69 (D. Me. 2006) (<u>Harvey II</u>). This timely appeal ensued. The amici, whose assistance we appreciate, have filed a brief in support of the Secretary's position.

## II. STANDARD OF REVIEW

Typically, we would review both a motion to enforce a judgment and a motion for relief from judgment for abuse of discretion. <u>See</u>, <u>e.g.</u>, <u>McDowell</u> v. <u>Phila. Hous. Auth.</u>, 423 F.3d 233, 238 (3d Cir. 2005) (motion to enforce a judgment); <u>Honneus</u> v. <u>Donovan</u>, 691 F.2d 1, 2 (1st Cir. 1982) (motion for relief from judgment). In this instance, however, the main issue on appeal concerns whether the two "count 3" regulations invalidated in <u>Harvey</u>

_I_ have been salvaged by the 2005 Amendments. That issue turns on a question of statutory interpretation, involving the significance and effect of the 2005 Amendments. Thus, appellate review is de novo. _See_ United States v. Leahy, 473 F.3d 401, 405 (1st Cir. 2007); Bonano v. E. Carib. Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004). If the statute is found to be unclear, however, an inquiring court should defer to the Secretary's reasonable interpretation. _See_ Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 15 (1st Cir. 2006).

There is a second issue bound up in this appeal — an issue that involves the scope of the final judgment. Thus, whether to enforce the judgment on this ground turns entirely on a question of law concerning the scope of the judgment itself. Consequently, we employ de novo review as to that issue as well. _See_ Fafel v. DiPaola, 399 F.3d 403, 409-10 (1st Cir. 2005); cf. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 75 (1st Cir. 2002) (explaining that "an error of law is the functional equivalent of an abuse of discretion").

## III. THE EFFECT OF THE 2005 AMENDMENTS

We begin this segment of our analysis by revisiting the procedural posture in which this appeal arises. After our decision in Harvey I, the district court entered a final judgment. "Final" is a relative term; even though a judgment is denominated as final,

a court may grant relief from it in a variety of circumstances. One such circumstance is when it is "no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). Thus, when subsequent legislation effects a change in the applicable law, a judgment, legally correct when entered, may become inequitable. See, e.g., Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 656 (1st Cir. 1997) (explaining that "a forward-looking judgment in equity can succumb to legislative action if the legislature alters the underlying rule of law"). So here: to the extent that the 2005 Amendments disturb the legal ground on which our decision in Harvey I rested, it would be inequitable to enforce the earlier judgment. We turn, then, to the import of those amendments.

In Harvey I, we held, inter alia, that two regulations, sections 205.600(b) and 205.605(b), contravened the plain language of the OFPA, 7 U.S.C. § 6510(a)(1). The statute provided at that time that certified handling operations "shall not, with respect to any agricultural product . . . add any synthetic ingredient during the processing or any postharvest handling of the product." Congress responded swiftly and precisely by specifying that the limitation should not apply to ingredients on the National List. See supra note 2.

In Harvey I, we also rejected the Secretary's reliance on 7 U.S.C. § 6517, noting that section 6517(c)(1)(B)(iii) specified

-9-

that the National List may provide for the use of otherwise prohibited substances only if the substance "is used in handling and i[s] non-synthetic but is not organically produced." Id. § 6517(c)(1)(B)(iii). Congress responded swiftly and precisely by deleting that subsection, while amending the title of the provision to clarify that handling is covered by the National List. See supra note 3.

It seems incontrovertible that these changes were a direct reaction to our decision in Harvey I. It seems equally incontrovertible that, with respect to count 3, they were designed to pull the legs out from under that decision. Any other conclusion would ignore both Congress's expressions of interest (as indicated by, among other things, the requested report) and the sequence of events. Any other conclusion would, therefore, blink reality.

The appellant grudgingly acknowledges that Congress intended to take away at least part of his bounty. He argues, however, that the 2005 Amendments failed to effect a complete resurrection of the invalidated regulations. He mounts this argument on two constructs. We address each in turn.

First, the appellant points out that, by its terms, the amended version of section 6510 only permits the use of "ingredient[s]" found on the National List. He asserts that the word "ingredient," though undefined in the OFPA itself, is a term of art in the regulations; an "ingredient" is a substance that is

-10-

"used in the preparation of an agricultural product that is still present in the final commercial product as consumed." 7 C.F.R. § 205.2. This, he says, distinguishes ingredients from another subset of substances, known as "processing aid[s]," which are used in processing but are either removed or exist in only negligible quantities in the final food product. See id. § 205.2. The appellant adds that the final judgment refers to ingredients and processing aids separately.[4] Lastly, he notes that the OFPA creates a presumption against non-organic substances. See 7 U.S.C. § 6504.

With this backdrop in place, the appellant posits that, unless the new version of section 6510 explicitly authorizes the use of processing aids found on the National List — which it does not — the default rule applies and these substances cannot be used for that purpose. Consequently, the challenged regulations cannot stand insofar as they authorize the inclusion of synthetic processing aids on the National List.

In defending this crabbed reading, the appellant offers an explanation as to why Congress might have authorized the use of synthetic ingredients but not synthetic processing aids. He

[4]The final judgement reads in relevant part:
With respect to Count 3: 7 C.F.R. §§ 205.600(b) and 605(b) are contrary to the OFPA and exceed the Secretary's rulemaking authority to the extent that they permit the addition of synthetic ingredients and processing aids in the handling and processing of products which contain a minimum of 95% organic content and which are eligible to bear the [U.S. Department of Agriculture] seal.

-11-

suggests that Congress limited its authorization because "ingredients, but not processing aids, must be disclosed on a product's label." Appellant's Br. at 25. Thus, Congress might rationally have intended to permit the use of synthetic ingredients while continuing to ban the use of processing aids.

This construct is too clever by half. Our opinion in Harvey I did not distinguish between the terms "ingredient" and "processing aid." The separate references in the final judgment appear to reflect a casual word choice by the district court. It attached no significance to the phraseology before the appellant filed his enforcement motion. At that point, the court lost no time in repudiating the appellant's attempted wordplay. See Harvey II, 462 F. Supp. 2d at 73-74. We must, of course, accord deference to the district court's interpretation of the wording of its own order. See Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987) (noting the "special role played by the writing judge in elucidating the meaning and intendment of an order which he authored").

Perhaps more important, there is not the slightest indication that Congress intended to draw a distinction between the two types of substances. The definition section of the statute, 7 U.S.C. § 6502, does not provide a definition for either "ingredient" or "processing aid." Given that the word "ingredient" — and not the

-12-

phrase "processing aid" — existed in section 6510(a)(1) prior to the 2005 Amendments, we agree with the district court, Harvey II, 462 F. Supp. 2d at 73, that it is "farfetched" to suppose that when Congress amended section 6510, it understood the word "ingredient" to have a narrow meaning distinct from, and exclusive of, "processing aid." The fact that these two terms were used by the Secretary in the implementing regulations does not alter this reality.

In an effort to parry this thrust, the appellant cites the Supreme Court's opinion in Lorillard v. Pons, 434 U.S. 575 (1978), for the proposition that Congress presumably knew of the distinction that the Secretary had made. Lorillard does not demand the result that the appellant advocates.

The rule of Lorillard is that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Id. at 580. Here, however, Congress — whatever its awareness of the regulations — was unarguably focused on ameliorating the effects of the decision in Harvey I. In that decision, we said that section 6510 stood as an obstacle to a regulation providing that "synthetic substances may be used as a 'processing aid or adjuvant.'" Harvey I, 396 F.3d at 39 (quoting 7 C.F.R. § 205.600(b)). Given our suggestion that section 6510 related to processing aids, a Congress accounting for the full

background of judicial precedent would not have concluded that section 6510, as it stood, related only to ingredients as opposed to processing aids.  In the context of this case, then, Lorillard argues eloquently against the appellant's position.

If more were needed — and we doubt that it is — the amendments to section 6517 confirm that Congress wanted to leave room for synthetics in the handling process.  Congress not only eliminated the section that previously had been interpreted by us to forbid the use of synthetics in handling but also specified in a new subtitle that the National List applies to handling.  Statutes must be viewed holistically, and statutory language must be read in context.  See Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2005).  Here, there can be no doubt but that, when the amended sections are read together, their language permits the use of synthetics as both ingredients and processing aids.

This brings us to the appellant's second, more extreme construct.  He notes that section 6517(c)(1) allows inclusion of a substance on the National List only in the event that it meets three criteria, delineated in section 6517(c)(1)(A)-(C).  Prior to the 2005 Amendments, the second criterion in this grouping specified (subject to limitations not relevant here) that the substance had to be related to production or, if it related to handling, had to be non-synthetic.  The 2005 Amendments struck the provision relating to handling in its entirety.  From this sequence of events, the

-14-

appellant teases out the notion that, inasmuch as the amended second criterion now speaks only to production, there is no procedure through which any substance used in handling can be included on the National List.  In other words, the net effect of excising section 6517(c)(1)(B)(iii) was not to make the National List more accessible to non-organics used in handling but, rather, to ban them lock, stock, and barrel.

Were we to accept this perverse reading, we would be guilty of outright defiance of Congress's easily discernible intent. That reading renders null and void the amendment to section 6510 and the titlular change to section 6517(c)(1), both of which specifically note that the National List applies to handling. Principles of judicial restraint counsel powerfully against undertaking so confrontational a course.

We need not tarry.  The amended version of the OFPA may not be a perfect syntactical model, but any ambiguities are easily resolved once one accounts for context. We consider "all available evidence of Congress's true intent when interpreting its work product." Koons Buick, 543 U.S. at 65 (Stevens, J., concurring). After careful examination of the totality of the evidence in this case, it is clear beyond hope of contradiction that there is only one credible interpretation of the 2005 Amendments.  That is the interpretation urged by the Secretary and endorsed by the district court.  In the final analysis, no sensible person could credit the

bizarre assertion that Congress amended one provision of the statute to stress its applicability to handling operations while it simultaneously eliminated the only vehicle through which handling operations might be included.

To sum up, the timing and scope of the 2005 Amendments, together with Congress's specific references to our decision in Harvey I, make it transparently clear that Congress set out to achieve the goal of restoring the "count 3" regulations to their pre-suit status; after all, Congress amended both sections on which Harvey I relied and, at the same time, took pains to excise the language that we identified as an obstacle to the Secretary's regulatory scheme. In light of these contextual trappings and the plain language of the amendments, we conclude without serious question that the district court did not err in denying the appellant's motion to enforce the judgment and granting the Secretary's cross-motion for relief from judgment.

## IV. THE STATEMENT

In a largely unrelated assignment of error, the appellant seeks to scuttle the Secretary's Food Contact Substances Policy Statement (the Statement). He alleges that the Statement permits the use of hundreds of synthetics in organic handling, some of which are processing aids or ingredients, without review by the National Organic Standards Board for inclusion on the National List.

As a part of his motion to enforce the judgment, the appellant asked the district court to strike the Statement. That court refused. See Harvey II, 462 F. Supp. 2d at 75. The appellant challenges that ruling.

We pause to put this challenge into workable perspective. In response to inquiries from the organic community, the Secretary issued the Statement as an expression of policy. In terms, it authorized the use of food contact substances classified as such by the federal Food and Drug Administration. See www.ams.usda.gov/nop/NOP/PolicyStatements/SyntheticSubstances.

The Secretary issued the Statement two months after the appellant sued and almost two years after the promulgation of the final rule. While some of the briefing in Harvey I apparently alluded to the Statement, it was not the target of any of the complaint's nine counts, nor was it mentioned in our opinion (because, among other things, it was not ripe for review). Thus, the Statement was neither part of our adjudication nor part of the final judgment subsequently entered in the district court.

The appellant argues that the Statement was nonetheless within the scope of the final judgment and, thus, can appropriately be challenged on a motion to enforce the judgment. We disagree.

A court's power to enforce a judgment is confined to the four corners of the judgment itself. Fafel, 399 F.3d at 411 (explaining that enforcement jurisdiction "extends only as far as

-17-

required to effectuate a judgment"); see also Peacock v. Thomas, 516 U.S. 349, 359 (1996).  Enforcement proceedings are summary in nature; they cannot be used to take up matters beyond the contours of the judgment and thereby short-circuit the usual adjudicative processes.  Consequently, when a matter is beyond the scope of a judgment, no relief is available through a motion to enforce the judgment.  See Fafel, 339 F.3d at 411.

This case furnishes a paradigmatic example of the operation of these principles.  In essence, the appellant argues that the Statement is within the scope of the final judgment because it cannot be reconciled with the provisions of that judgment.  That argument is an exercise in boot-strapping and, as such, misses the point.  The Statement was not litigated in the original case, and the relief that the appellant seeks is, therefore, inappropriate on a motion to enforce the judgment.

Let us be perfectly clear.  In affirming the denial of the appellant's motion to enforce the judgment on this ground, we do not decide whether the Statement does or does not contravene either the current version of the OFPA or the regulations thereunder.  By the same token, we do not decide whether the rationale behind the final judgment renders the Statement suspect.  The answers to these questions must await a new and separate suit, which the appellant is free to initiate if he so chooses.  We hold only that the

appellant cannot alter the dimensions of his original suit in a post-judgment enforcement proceeding.

## V.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the decision of the district court in all relevant respects.


**<u>Affirmed</u>**.